FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
                  :   Chapter 13
In re:               :
                 :   Case No. 13-36516 (cgm)
  Jose and Carmen Morales,   :
                 :
         Debtor(s).  :
                 :
-----------------------------------------------------------------X

## MEMORANDUM DECISION DENYING MOTION TO APPROVE LOAN MODIFICATION AND REDUCE CLAIM IN PART AND GRANTING IN PART

**A P P E A R A N C E S :**

Andrea B. Malin
Genova & Malin, Attorneys
The Hampton Center
1136 Route 9
Wappingers Falls, NY 12590-4332
*Attorney for Debtors*

Jay Teitelbaum
Teitelbaum & Baskin, LLP
1 Barker Avenue, Third Floor
White Plains, New York 10601
*Attorney for JPMorgan Chase Bank, N.A.*

**CECELIA G. MORRIS**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

    Debtors filed a motion to approve a loan modification based on a Home Affordable Modification Program trial plan. The proposed order includes language that would reduce the mortgagee's bankruptcy claim to zero. The mortgagee objects to the claim provision in the order, arguing that the HAMP trial modification does not create a basis for altering its secured claim. The Court agrees with the mortgagee and strikes the claim reduction language from the order.

**Jurisdiction**

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a) and the Amended Standing Order of Reference signed by Chief Judge Loretta A. Preska dated January 31, 2012. This is a "core proceeding" under 28 U.S.C. § 157(b)(2)(B) (allowance of claims against the estate).

**Background[1]**

On December 4, 2013, the Debtors filed a Motion to Approve Loan Modification and Reduce Claim to Zero ("Motion"). Mot. 1, ECF No. 34. The Motion states that the Debtors were offered a trial modification (the "Trial Modification") by J.P. Morgan Chase, N.A. ("Creditor"). *Id.* at 2. The Trial Modification is a trial plan ("Trial Period Plan") under the Home Affordable Modification Program ("HAMP") and requires the Debtors to make three monthly trial payments of $1,600.44 beginning January 1, 2014. *Id.* Debtors state that the final loan modification "that will result" from the Trial Modification will recapitalize arrears under the original note and mortgage into a new loan. *Id.* at 2-3. According to the Debtors, "if the debtors make the THREE (3) trial payments, the debtors will be given a Final Loan Modification Agreement without condition or limitation." *Id.* at 3. Debtors seek approval of the Trial Modification at this stage despite the fact that "the [f]inal [m]odification is conditional upon the debtors' performance [of the Trial Modification]." *Id.*

Attached to the Motion is a proposed order ("Proposed Order") that contains some provisions that are not discussed in the body of the Motion. Prop. Order 3, ECF No. 34. The Proposed Order seeks to reduce the Creditor's claim to zero ("Claim Language"). *Id.* The Proposed Order provides "that Claim No. 12 filed on October 1, 2013 by J.P. MORGAN

---

[1] Unless otherwise noted, the following discussion constitutes the Court's findings of facts and conclusions of law pursuant to Fed. R. Bankr. P. 7052.

Page **2** of **13**

CHASE, N.A. ("CHASE") is hereby reduced to zero and will receive no payment under the plan . . . ." *Id.* The Proposed Order also states

> that J.P MORGAN CHASE, N.A. shall deliver to the debtors the permanent loan modification agreement within 30 days of the date upon which the debtors completes [sic] the trial payments and shall return to the debtors a fully executed copy thereof within twenty-one (21) days of its receipt of the Loan Modification Agreement executed by the debtors.

*Id.*

Creditor filed a limited objection to the Motion. Obj. 1, ECF No. 37. Creditor opposes "to the extent of the proposed treatment of the [Creditor's] Claim." *Id.* at 2. According to the Creditor, alteration of the claim during the Trial Modification violates § 502 of the Bankruptcy Code.[2] *Id.* Creditor states that the basis for its claim is the underlying loan obligation, an obligation that the Creditor believes to be unchanged by the Trial Modification. *Id.* at 4-6. To the extent a permanent modification would affect the claim based on the underlying loan obligation, the Creditor argues that there are several conditions to permanent modification that are not presently satisfied. *Id.* at 4.

Creditor believes that reclassification of its claim during the Trial Modification forces the Creditor to preemptively object to confirmation of any chapter 13 plan that does not treat its unmodified arrears. *Id.* at 2. Creditor asserts that confirmation of a plan based only on the Trial Modification will lead to an infeasible plan if no permanent modification is executed. *Id.*

In further support of its position, Creditor points to this Court's General Order M-451(VI)(c)(4), which provides that "[i]n a chapter 13 case, the deadline by which a Creditor must object to confirmation of the Chapter 13 plan shall be extended to permit the Creditor an additional (14) days after the filing of the 'Order Terminating Loss Mitigation and Final

---

[2] Unless otherwise noted, all sectional references are to the United States Bankruptcy Code, 11 U.S.C. §§ 101 – 1532 (2012).

Report.'" *Id.* at 6 (quoting *In re* Adoption of Modified Loss Mitigation Program Procedures, Gen. Or. No. M–451, at 8 (June 17, 2013) (amending General Orders M-364 and M-413), *available at* http://www.nysb.uscourts.gov/court-info/local-rules-and-orders/general-orders)).[3] Creditor argues that this provision recognizes that confirmation must wait until Loss Mitigation is terminated. Obj. 6, ECF No. 37. According to Creditor, termination would only properly occur in this case after execution of a permanent modification. *Id.*

## Discussion

A. <u>The Court's Loss Mitigation program and HAMP modifications.</u>

The Trial Modification was achieved through this Court's Loss Mitigation program. "The premise of the Loss Mitigation program is simple: Put the decision-making parties in direct contact with each other, and set a schedule for their discussion as to what can be done about the debtor's home." *In re Bambi*, 492 B.R. 183, 188 (Bankr. S.D.N.Y. 2013) (quoting Hon. Cecelia G. Morris & Mary K. Guccion, *The Loss Mitigation Program Procedures for the United States Bankruptcy Court for the Southern District of New York,* 19 Am. Bankr. Inst. L. Rev. 1, 4 (2011)). Many parties in Loss Mitigation seek to utilize HAMP. The court in *In re Cruz* provided a synopsis of HAMP:

> HAMP arose out of the Emergency Economic Stabilization Act of 2008, and is administered by the Federal National Mortgage Association ("Fannie Mae") as the agent of the Department of the Treasury. The program requires that all mortgage loans owned or guaranteed by Fannie Mae or the Federal Home Loan Mortgage Corporation ("Freddie Mac" and together with Fannie Mae, the government-sponsored agencies or "GSEs") that meet certain requirements be evaluated by the loan servicers for loan modifications. If a borrower qualifies, then the servicer is obligated to modify the loan in accordance with a predefined formula that reduces the borrower's monthly payment to 31% of his gross income for the first five years. In addition, many servicers of mortgage loans not owned by the GSEs have executed so-called Servicer Participation Agreements ("SPAs") with Fannie Mae, as agent for the Treasury Department, by which they agree to review and modify loans on similar terms.

---

[3] General Order M-451 shall be short cited hereinafter as *Gen. Or. M-451*.

*Cruz v. Hacienda Assocs., LLC (In re Cruz)*, 446 B.R. 1, 3 (Bankr. D. Mass. 2011) (internal citation omitted).

The Treasury Department, acting through Fannie Mae, has produced guidelines that mortgage servicers must follow when a borrower is considered for a modification under HAMP. *Id.*; *see also* U.S. Dep't of the Treasury, Making Home Affordable Program Handbook for Servicers of Non-GSE Mortgages (ver. 4.3 2013).[4]  Pursuant to these Guidelines, "[f]ollowing underwriting, N[et] P[resent] V[alue] evaluation and a determination, based on verified income, that a borrower qualifies for HAMP, servicers will place the borrower in a trial period plan (TPP)." HAMP Guidelines at 122. The Trial Period Plans typically last three months. *See id.* According to the Guidelines, "[b]orrowers who make all trial period payments timely and who satisfy all other trial period requirements will be offered a permanent modification." *Id.*

Once an agreement is reached in Loss Mitigation, the Procedures allow parties to obtain court approval of the agreement "in any manner permitted by the Bankruptcy Code and Federal Rules of Bankruptcy Procedure . . . , including, but not limited to, a stipulation, sale, plan of reorganization or amended plan of reorganization; and a Motion to Approve Loan Modification." *Gen. Or. M-451* at 7. Parties often seek approval of HAMP Trial Plans before a permanent modification is offered, and the Court provides a form Order Approving Trial Loan Modification to facilitate those approvals. *See Order Approving Trial Loan Modification*, United States Bankruptcy Court, Southern District of New York, http://www.nysb.uscourts.gov/sites/default/files/TrialMod ProposedOrderEO.docx (last visited March 5, 2014).

B. <u>The incentive to reduce the claim.</u>

Chapter 13 debtors often seek to reduce, reclassify, or moot the lender's secured claim as part

---

[4] The HAMP Handbook shall be hereinafter short cited as "HAMP Guidelines."

of a motion to approve a loan modification. The reason is that the debtor cannot confirm a chapter 13 plan that incorporates the modification where a secured claim based on the original loan obligation is outstanding. An allowed secured claim can only be treated in one of three ways in a chapter 13 plan. 11 U.S.C. § 1325(a)(5); *Associates Commercial Corp. v. Rash*, 520 U.S. 953, 956-57 (1997). The plan can provide for surrender the collateral securing the claim, payment of the claim in an amount "not less than the allowed amount of such claim,"[5] or provide a treatment that the claimant will accept. *Id.*

In Loss Mitigation cases where a loan modification is offered, this means the debtor can pay the claim in full, surrender the principal residence, or obtain acceptance from the creditor. In cases where a Trial Period Plan is offered, some debtors wait to execute a permanent modification before confirming the plan. Once a permanent modification is executed, acceptance of the plan by the creditor is much more likely. None of the three options are viable during Trial Period Plans. The debtor will seek to retain the collateral and make the modified payment. The lender may also decline to accept treatment in the plan that provides for less than payment of its entire secured claim, despite a Court-approved Trial Period Plan. As this case illustrates, lenders may not be convinced that the trial plan will become a permanent modification.

---

[5] The Supreme Court in *Rash* labeled § 1325(a)(5)(B), which allows the debtor to pay the allowed amount of the secured claim, as the "'cram down' power." 520 U.S. at 957. By using cramdown,

> the debtor is permitted to keep the property over the objection of the creditor; the creditor retains the lien securing the claim, see § 1325(a)(5)(B)(i), and the debtor is required to provide the creditor with payments, over the life of the plan, that will total the present value of the allowed secured claim, *i.e.,* the present value of the collateral, see § 1325(a)(5)(B)(ii). The value of the allowed secured claim is governed by § 506(a) of the Code.

*Id.* Section 1322(b)(2) makes it impossible for the Debtors in this case to elect cram down with respect to this secured claim. Section 1322(b)(2) provides that the chapter 13 plan may "modify the rights of holders of secured claims, other than a claim secured by a security interest in real property that is the debtor's personal residence . . . ." The simple rule is that "a debtor cannot strip down a mortgage lien on the debtor's principal residence . . . if the mortgage lien is secured by some value in the property." *In re Laycock*, 497 B.R. 396, 398 (Bankr. S.D.N.Y. 2013); *see also Dewsnup v. Timm*, 502 U.S. 410, 417 (1992); *Nobelman v. American Savings Bank*, 508 U.S. 324, 331-32 (1993). The Loss Mitigation program only applies to principal residences, meaning that this claim is not subject to cram down. *Gen. Or. M-451* at 2.

Other debtors attempt to object to the claim and confirm a chapter 13 plan prior to execution of the permanent modification. The Court believes this is due to delays in receiving permanent modifications from lenders. The Court's experience is consistent with the allegations in numerous published opinions. *See, e.g.*, *Salvador v. Bank of America (In re Salvador)*, 456 B.R. 610, 617 (Bankr. N.D. Ga. 2011) (Debtors allegedly signed a trial plan on December 7, 2009, made the necessary payments, and did not receive a permanent modification); *Jenkis v. JP Morgan Chase Bank, N.A. (In re Jenkins)*, 488 B.R. 601, 610 (Bankr. E.D. Tenn. 2013) (Lender asserted that it "did not determine during the Trial Period that Plaintiffs qualified for a permanent modification, so it did not provide Debtors with a fully executed copy of the Modification Agreement . . . . Accordingly, the Loan Documents were not modified . . . [and] the Plaintiff's obligations reverted back to the contractual terms . . . ."); *Bosque v. Wells Fargo Bank, N.A.*, 762 F. Supp. 2d 342, 354-56 (D. Mass. 2011) (Plaintiffs sought provisional class certification and an order compelling defendant to provide notice of the lawsuit to all borrowers who signed trial plans but were not offered permanent modifications by the dates specified in the trial plan agreements; court denied motion without prejudice and allowed continued discovery); *Picini v. Chase Home Finance LLC*, 854 F. Supp. 2d 266, 270 (E.D.N.Y. 2012) (Plaintiffs alleged that they made all required payments under a March 2010 trial plan and did not receive any information regarding a potential permanent modification until October 2010, and were then dropped from HAMP entirely). Given this landscape, it is not surprising that many debtors attempt to reclassify, reduce, or moot the secured claim during the Trial Period Plan so they can move forward with confirmation in a timely fashion.

Despite the practical appeal of reclassification of the secured claim during the Trial Period Plan, § 502(a) provides that "[a] claim or interest, proof of which is filed under section

501 of this title, is deemed allowed, unless a party in interest, including a creditor of a general partner in a partnership that is a debtor in a case under chapter 7 of this title, objects." The Motion and Proposed Order must give rise to a valid claim objection before the Court can enter the Proposed Order as written.

C. The Trial Modification does not provide a basis for reclassification of the Creditor's claim.

Section 502(b) provides that "[e]xcept as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that" one of the nine exceptions listed in § 502(b)(1) – (9) are applicable. Subsections (e)(2), (f), (g), (h), and (i) are not relevant here.

"[T]he Supreme Court has held that if there is no basis to disallow a claim under section 502, the claim must be allowed." *Harbinger Capital Partners LLC v. Ergen (In re LightSquared Inc.)*, ___ B.R. ___, Ch 11 Case No. 12-12080 (SCC), Adv. No. 13-1390 (SCC), 2013 WL 6140717, at *10 (Bankr. S.D.N.Y. Nov. 21, 2013) (citing *Travelers Cas. & Surety Co. of Am. v. Pacific Gas & Electric Co.*, 549 U.S. 443, 449 (2007)). Paragraphs (b)(1) through (9) of § 502(b) provide the only bases for objecting to a claim. *In re Muller*, 479 B.R. 508, 512 (Bankr. W.D. Ark. 2012) (citation omitted).

The only potentially applicable provision is § 502(b)(1), which states that a claim may be disallowed if "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." To enter the Claim Language, there must either be an agreement between the parties to disallow the claim, or the claim must be unenforceable under applicable law

The HAMP Guidelines and the Trial Modification agreement reveal that the Trial Modification does not constitute an agreement between the Debtors and the Creditor to modify Creditor's secured claim. There are several conditions in the HAMP Guidelines that must be met before a Trial Period Plan can be converted to a permanent modification. The HAMP Guidelines provide that "[b]orrowers who make all trial period payments timely and who satisfy all other trial period requirements will be offered a permanent modification." HAMP Guidelines at 122. A necessary condition is that borrowers "make all trial period payments." *Id.* The HAMP Guidelines make clear that "[b]orrowers who do not make current trial period payments are considered to have failed the trial period and are not eligible for a permanent modification." *Id.* at 123. Another condition is that the lender must maintain first lien position and the underlying note and mortgage must remain fully enforceable. *Id.* at 128. The lender must also obtain insurer approval for the modification. *Id.* at 130.

Where the conditions to receiving a permanent modification are not met, the original loan obligation is not altered. The HAMP Guidelines provide that "[a] servicer should not change a borrower's scheduled loan terms in its servicing system and/or mortgage file during the trial period." *Id.* at 123. Any trial payments received by the lender are applied to the existing loan, and are not returned to the borrower if the borrower ultimately does not qualify for a permanent modification. *Id.* The fact that the underlying loan is still valid during the Trial Period Plan is also reflected in the Trial Modification offer submitted to the Debtors, which provides that the "existing loan and loan requirements remain in effect and unchanged during the trial period." Mot. Ex. A, at 2, ECF No. 34. The Court concludes that there is no agreement between the parties to modify the Creditor's claim at this time.

Nor does it appear that the Trial Modification renders the claim unenforceable under

applicable law for purposes of § 502(b)(1). In deciding whether applicable law renders a claim unenforceable, "[t]he 'basic federal rule' in bankruptcy is that state law governs the substance of claims." *Raleigh v. Illinois Dept. of Revenue*, 530 U.S. 15, 20 (2000) (citing *Butner v. United States,* 440 U.S. 48, 55 (1979)). New York courts have found that the trial plan does not alter the underlying loan obligation. In *Wells Fargo Bank, N.A. v. Meyers*, 966 N.Y.S.2d 108, 110 (N.Y. App. Div. 2013) (Second Department), the parties participated in mandatory foreclosure settlement conferences pursuant to N.Y. C.P.L.R. 3408(f) (McKinney 2007 & Supp. 2013). In August of 2009, the borrowers received a trial HAMP offer, which the borrowers signed on September 1, 2009. *Id.* at 111. The trial offer indicated that the lender would not foreclose during the Trial Period Plan if the trial payments were made; nonetheless, the lender initiated foreclosure one day later on September 2, 2009. *Id.* The lender then informed the borrowers that a second Trial Period Plan was required due to a miscalculation. *Id.* On April 28, 2010, the lender sent the borrowers a letter stating that they were denied for modification, as their monthly housing expense was less than 31% of their gross monthly income. *Id.* The parties appeared at a conference before the referee, and the lender indicated that it would send the borrowers a modification within five to seven days. *Id.* Despite this assurance, the lender sent the borrowers another rejection letter on May 20, 2010. *Id.* Another modification was offered with higher payments than the original; that offer was rejected by the borrowers. *Id.* at 111-12.

  The trial court ordered the lender to provide the borrowers with a final modification under the original trial terms, citing the lender's failure to negotiate in good faith as required by section 3408 of the New York Civil Practice Law and Rules. *Id.* at 112. The appellate court reversed this remedy, stating that "[t]he 'original modification agreement' was merely a trial arrangement, not an agreement for the binding obligations of the parties going forward." *Id.* at

116. The court noted that while section 3408 of the New York Civil Practice Law and Rules contains no express remedy for the failure to negotiate in good faith, "[t]he courts may not rewrite the contract that the parties freely entered into—the loan and mortgage agreements—upon a finding that one of those parties failed to satisfy its obligation to negotiate in good faith pursuant to CPLR 3408." *Id.* at 117.  The court did note that there were other potential remedies for the failure to negotiate in good faith. *Id.* at 116.  Forcing the creditor into a new agreement that modified the existing loan terms was not an available remedy. *Id.*

Applying comparable rationale, the court in *JP Morgan Chase Bank, N.A. v. Ilardo* found that

> [s]ince there is no duty on the part of the HAMP servicers to modify mortgages[,] neither the engagement in the processing of loan modification applications nor the issuance of a [Trial Period Plan] gives rise to a right on the part of borrowers to a permanent loan modifications if they successfully complete the trial plan payments . . . .

36 Misc. 3d 359, 373-74 (N.Y. Sup. Ct. March 5, 2012) (Suffolk County) (internal citations omitted).

Similarly, district courts for the Southern District of New York have concluded that HAMP does not provide a private cause of action to the borrower. *Wheeler v. Citigroup*, 938 F. Supp. 2d 466, 471 (S.D.N.Y. 2013) ("HAMP does not create a private right of action for borrowers against loan servicers.") (citations omitted); *Griffith–Fenton v. Chase Home Finance*, No. 11 CV 4877(VB), 2012 WL 2866269, at *3 (S.D.N.Y. May 29, 2012) ("HAMP does not provide a private cause of action, nor may plaintiff enforce the agreement as a third-party-beneficiary.").

Creditor's claim would remain an allowed secured claim even if completion of the Trial Modification entitled the Debtors to a permanent modification under applicable law.  Pursuant to

§ 502(b)(1), an objection to a claim cannot stand if the sole basis for the objection is that the claim is "contingent or unmatured." A contingent claim is an obligation "that will become due upon the happening of a future event that was within the actual or presumed contemplation of the parties at the time the original relationship between the parties was created." *In re South Side House, LLC*, 451 B.R. 248, 260 (Bankr. E.D.N.Y. 2011) (quoting *Olin Corp. v. Riverwood Int'l Corp. (In re Manville Forest Prods. Corp.),* 209 F.3d 125, 128–29 (2d Cir. 2000)). As noted above, the Trial Modification agreement and the HAMP Guidelines make clear that the presence of the Trial Modification does not affect the underlying loan. Completion of the Trial Modification is the only way the Debtors could become entitled to a permanent modification, and completion has not occurred. The claim will either stand or be modified, depending on the "happening of a future event . . . ." *Id.* That the claim is contingent during the Trial Modification does not provide a basis for objection.

The Court concludes that § 502(b)(1) does not apply. At this time, the Creditor holds an allowed secured claim that must remain allowed "in such amount" as it was filed. 11 U.S.C. § 502(b).

D. <u>The Court declines to include the language proposed by the Creditor.</u>

Creditor proposes that the Court substitute the Claim Language in the Proposed Order with a clause stating "that upon the execution of permanent loan modification on terms consistent with this Order, (i) Claim No. 12 shall be expunged and reduced to zero; and (ii) Chase shall receive no payment under the plan in connection with Claim No. 12." Obj. 3, ECF No. 37. As the Court concludes there is no basis to alter the Creditor's claim at this time, the Court will simply strike the Claim Language.

E.  <u>The Court will enter the language that imposes a deadline for delivery of the permanent modification.</u>

The Proposed Order contains the following requirement:

J.P MORGAN CHASE, N.A. shall deliver to the debtors the permanent loan modification agreement within 30 days of the date upon which the debtors completes [sic] the trial payments and shall return to the debtors a fully executed copy thereof within twenty-one (21) days of its receipt of the Loan Modification Agreement executed by the debtors.

Prop. Order 3, ECF No. 34.

Creditor does not object to this portion of the Proposed Order. "[T]he legal standard for determining the propriety of a bankruptcy settlement is whether the settlement is in the 'best interests of the estate.'" *In re Adelphia Commc'ns Corp.*, 368 B.R. 140, 225 (Bankr. S.D.N.Y. 2007) (quotation omitted). As noted above, the Court has observed that debtors are often forced to wait extensive periods of time to receive permanent modifications once trial plans are complete. This delays administration of bankruptcy cases and may prejudice other creditors. The Court will enter the language in the best interests of the estate.

## Conclusion

For the foregoing reasons, the Court strikes the Claim Language from the Proposed Order, and will enter the Proposed Order in all other respects. Debtors should submit an order consistent with this opinion.

Dated: Poughkeepsie, New York
       March 11, 2014

                                        <u>/s/ Cecelia G. Morris</u>
                                        CECELIA G. MORRIS
                                        CHIEF UNITED STATES BANKRUPTCY JUDGE